HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLAZEFRAME INDUSTRIES, LTD.,

            Plaintiff,

   v.

CALIFORNIA EXPANDED METAL
PRODUCTS CO.,

            Defendant.

CASE NO. C12-1922 RAJ

ORDER

This matter comes before the court on defendant California Expanded Metal Products Co.'s ("CEMCO") motion to transfer venue.[1]  Dkt. # 12.  CEMCO argues that this patent infringement case could have been initiated in the Central District of California and that the convenience of parties and witnesses and interest of justice warrant transfer.  Plaintiff BlazeFrame Industries, Ltd. ("BlazeFrame") argues that the convenience of the parties and witnesses and interest of justice do not favor transfer. Dkt. # 18.

The district court has discretion to adjudicate motions to transfer according to an individualized case-by-case consideration of convenience and fairness under 28 U.S.C. §

_____

[1] This motion may be decided on the papers submitted.  Accordingly, the parties' request for oral argument is DENIED.

ORDER- 1

1404(b).  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section 1404(a) requires that (1) the district to which defendant seeks to have the action transferred is one in which the action might have been brought, and (2) the transfer be for the convenience of the parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  Plaintiff does not dispute that this case could have been brought in California. Rather, it argues that the interests of the parties, witnesses and justice do not favor transfer.

In determining whether the interests of the parties, witnesses and justice favors transfer, courts must weigh multiple factors in its determination whether transfer is appropriate in a particular case.  *Jones*, 211 F.3d at 498.  The court may consider the eight private and public interest factors:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance; and (8) the ease of access to sources of proof.  *Id.* at 498-99.  The court may also consider court congestion, pendency of related litigation in the transferee forum and the public's interest in adjudicating the controversy in the chosen forum.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "Because these factors cannot be mechanically applied to all types of cases, they shall be considered here under the statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice."  *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005).

**A. Convenience of the Parties**

A plaintiff's choice of forum is entitled to greater deference when a plaintiff chooses its home forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). BlazeFrame is undisputably a resident of this District.  Dkt. # 16 (Klein Decl.) ¶ 2.

1    However, in patent infringement cases, the preferred forum is that which is the center of

2    gravity of the accused activity. *Amazon.com*, 404 F. Supp. at 1260. "The district court

3    ought to be as close as possible to the milieu of the infringing device and the hub of

4    activity centered around its production." *Id.* (internal quotes omitted); *see also In re*

5    *Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the

6    bulk of the relevant evidence usually comes from the accused infringer.  Consequently,

7    the place where the defendant's documents are kept weighs in favor of transfer to that

8    location.").  Although the inventor of the three patents at issue resides in Washington

9    (Dkt. # 16 (Klein Decl.) ¶ 1)), all manufacturing of the accused products takes place at

10   CEMCO's facilities in the City of Industry and Pittsburgh, California (Dkt. # 13

11   (Poliquin Decl.) ¶ 28). Additionally, all of CEMCO's patent-related decisions and all

12   documents concerning the sale and importation of the accused products are located in the

13   City of Industry.[2]  Dkt. # 13 (Poliquin Decl.) ¶¶ 10, 26.  Accordingly, the center of

14   gravity of the infringing devices is the Central District of California.

15          However, the court may not transfer a case simply to shift the burden from one

16   party to another.  *See Decker Coal*, 805 F.2d at 843.  Both parties assert that litigation in

17   the less-favored forum would create significant financial burdens.  The only evidence

18   before the court with respect to the financial solvency of the parties is the Klein

19   declaration.  Mr. Klein asserts that BlazeFrame has average annual gross revenues of $1.2

20   to $1.3 million dollars over the past three years, and estimates that CEMCO has annual

21   revenues greater than $100,000,000.  Dkt. # 16 (Klein Decl.) ¶ 13.  Although CEMCO

22

23   _____

24       [2] BlazeFrame argues that CEMCO misstated that all documents are located in the Central
     District of California.  However, BlazeFrame misreads CEMCO's arguments.  CEMCO has

25   argued (and presented evidence) that all documents *related to the accused products* and/or all
     *CEMCO* documents are located in California.  These facts are undisputed.  The court

26   acknowledges that BlazeFrame's documents related to the patents are in Washington.  However,
     it is the location of the infringing products and documents related to the infringing products that

27   are most relevant.

1    complains that the $100,000,000 is annual revenue instead of profit, it has not provided
2    the court with any additional information of its annual gross revenue so that the court can
3    make a fair comparison.  Given the only evidence before the court, the court notes that it
4    appears that CEMCO is better able to absorb the financial burden of litigating in
5    Washington.
6          BlazeFrame also argues that the Patent License Agreement (the "Agreement") that
7    is the subject of the case in California[3] has a forum selection clause that allows this case
8    to be litigated in Washington.  BlazeFrame concedes that the Agreement is between
9    CEMCO and Klein, but argues that it is the assignee of the patents covering Klein's later
10   inventions.  The Agreement provides:  "Any dispute arising out of or relating to the terms
11   of this Agreement, *or to the patents subject to this Agreement*, including whether a
12   product is covered by the Licenses granted herein, will be resolved in accordance with
13   the procedures specified in this section, which shall be the sole and exclusive procedure
14   for the resolution of any such disputes." Dkt. # 12-1 at 6, § 9.1 (emphasis added).  The
15   Agreement also provides that if a dispute remains unresolved after specified procedures
16   for dispute resolution, either party may initiate legal proceedings.  *Id.* § 9.4.  "If initiated
17   by KLEIN, then the legal proceedings may take place in the state of Washington.  If
18   initiated by CEMCO, then the legal proceedings may take place in the state of California.
19   Each Party agrees to submit to the jurisdiction of Washington and California."  *Id.*
20   Finally, the Agreement provides that it "may not be amended or modified except by a
21   written instrument signed by all the Parties" and that it "shall be governed by, and
22   construed in accordance with, the laws of the State of California."  *Id.* at 7-8, §§ 12.1,
23   12.2.
24
25
26   _____
27          [3] *CEMCO v. Clarkwestern Dietrich Bldg. Sys. LLC*, Case No. C12-10791 DDP-MRW.

ORDER- 4

1    Here, the forum selection provision is permissive, not mandatory.  *See Hunt*

2    *Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  Thus, the forum

3    selection clause does not mandate a particular venue.[4]

4    The court finds that, on balance, the convenience of the parties slightly weighs in

5    favor of transfer.

6    **B. Convenience of the Witnesses**

7    The relative convenience of the witnesses is often recognized as the most

8    important factor to be considered in ruling on a section 1404 motion.  *Data Retrieval*

9    *Tech, LLC v. Sybase, Inc.*, Case No. C08-1702 RSM, 2009 WL 960681, *4 (W.D. Wash.

10    2009).  When considering the convenience of the witnesses, the convenience of non-party

11    witnesses is the more important factor.  *Amazon.com*, 404 F. Supp. 2d at 1260.  The court

12    should consider how many witnesses each side may have and the relative importance of

13    their testimony.  *Id.*; *see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.

14    1984) (noting that the court should have "examined the materiality and importance of the

15    anticipated witnesses' testimony and then determined their accessibility and convenience

16    to the forum.").

17    BlazeFrame has identified two non-party witnesses who reside in Auburn,

18    Washington and who observed Klein's research and development activities.  Dkt. # 16

19    (Klein Decl.) ¶ 10.  BlazeFrame also identifies Klein, Klein's patent attorney,[5] and a

20    Director of BlazeFrame as witnesses who reside in Washington State.  *Id.*  Klein, as the

21    ────────────────

22    [4] The court also notes that Klein did not file this case.  The court has disregarded counsel

23    for plaintiff's supplemental declaration.  He has made various arguments, rather than provide facts of which he has personal knowledge, in an apparent attempt to circumvent this District's local civil rules regarding surreply briefs.  The parties have not adequately briefed whether

24    federal or state law governs the assignability of patent licenses (*see e.g.*, *In re CFLC, Inc.*, 89

25    F.3d 673 (9th Cir. 2002)), and the court need not decide this issue for purposes of this motion.

26    [5] The court notes that BlazeFrame has not provided the court with any understanding of the nature of the testimony by the patent attorney outside of its assertion that he "is also a

27    potential witness, particularly in light of CEMCO's unfounded assertion of inequitable conduct counterclaims."  Dkt. # 18 (Opp'n) at 16.

ORDER- 5

1  owner of BlazeFrame, and the Director are party witnesses.  Although Klein's testimony,

2  as the owner of BlazeFrame and inventor of the patents-in-suit, is material and important

3  to BlazeFrame's patent infringement and tortious interference claims, it is unclear to the

4  court whether the Director's testimony is material and important.[6]  BlazeFrame has also

5  failed to provide the court with an understanding of whether the two non-party witnesses

6  would voluntarily appear in California.[7]  *See Jones*, 211 F.3d at 499 (on motion to

7  transfer venue, court may consider, *inter alia*, "the availability of compulsory process to

8  compel attendance of unwilling non-party witnesses").  Nevertheless, given that CEMCO

9  is challenging, *inter alia*, whether Klein is the true inventor, or at least the sole inventor,

10  of the patents-in-issue (*see* Dkt. # 13 (Poliquin Decl.) ¶ 13), it appears that the testimony

11  of the two non-party witnesses who "observed [his] research and development activities"

12  likely will be material and important.

13       In contrast, CEMCO has identified fourteen party witnesses, but no non-party

14  witnesses.  Dkt. # 13 (Poliquin Decl.) ¶¶ 12-25.  Twelve[8] of these party witnesses will

15  likely testify regarding material and important issues, including the history, development

16  and technical aspects of CEMCO's accused products, CEMCO's counterclaims,[9] and

17  CEMCO's affirmative defenses.  However, it appears that at least some of the testimony

18  identified is duplicative.  For instance, Poliquin, as CEO, and Porter, as Executive Vice

19  President, appear to offer overlapping testimony regarding the products at issue in this

20  _____

21       [6] Klein indicates that the Director "helps run the company, and spearheaded negotiations

22  with CEMCO, including [the] effort at mediation."  Dkt. # 16 (Klein Decl.) ¶ 10.  Without
    additional information, the court cannot determine the materiality and importance of the

23  Director's testimony to BlazeFrame's patent infringement and tortious interference claims.

24       [7] BlazeFrame represents that they were "among the only eyewitnesses to Klein's
    inventive process."  Dkt. # 18 (Opp'n) at 16.

25       [8] Raymond Poliquin, Fernando Sesma, Wes Westmoreland, Todd McCrite, Rob

26  Forsberg, Don Pilz, Georgi Hall, Tom Porter, Richard Poliquin, Don Banta, Eric Larson and
    Steve Farkas.

27       [9] CEMCO requests declaratory relief in its counterclaim for non-infringement, invalidity
    and unenforceability of the '293, '314 and '718 patents.  Dkt. # 10 at 16-22.

1    case and the licensing agreement with Klein.  Additionally, CEMCO offers the testimony

2    of the General Sales Manager, Northern Regional Sales Manager, and Regional Sales

3    Manager.  While the scope of the testimony offered appears to be different for these

4    individuals, given CEMCO's recognition of the importance of judicial efficiency, the

5    court believes that CEMCO could streamline its witnesses.  Additionally, two witnesses

6    (Rosemary Garcia and Diane Force) are custodian of records and are only important for

7    admissibility of the various records.[10]  Accordingly, the court believes that CEMCO can

8    present its case with ten of its identified purported witnesses to eliminate duplicative

9    testimony.

10        Although the convenience of non-party witnesses is more important, the court

11   cannot simply ignore the party witnesses.  Given the number of witnesses on each side

12   (five for BlazeFrame and ten for CEMCO), the materiality and importance of their

13   testimony to the claims and defenses, and the inconvenience to BlazeFrame's three non-

14   party witnesses, the court finds that this factor weighs in favor of transfer.

15   **C. Interest of Justice**

16        The interest of justice factor is perhaps the most important.  *Amazon.com*, 404 F.

17   Supp. 2d at 1261.  In considering the interest of justice, the court weighs such factors as

18   ensuring speedy trials, trying related litigation together, and having a judge who is

19   familiar with the applicable law try the case.  *Id.*

20        Plaintiff has provided the court with the 2011 Federal Court Management

21   Statistics, arguing that this District appears to progress to resolution faster in this court

22   than in the Central District of California.  Dkt. # 19 (Beattie Decl.) ¶ 7, Ex. 1.  However,

23   the statistics as to the speedier disposition or speedier trial offered in Washington is

24   illusory.  The statistics do not reflect this court's significant case load, as evidenced by

25

26        [10] The court notes that parties routinely stipulate to the admissibility of business records
27   and/or establish foundation and admissibility during deposition, and thus, these two witnesses
     likely are not material to the merits of the case.

1    this court's order, some six months after CEMCO filed the motion to transfer venue.

2    Additionally, in the court's experience, it takes much longer than one year just to arrive at

3    a *Markman* hearing.  Accordingly, the factor of avoiding court congestion is neutral.

4         Additionally, since patent infringement claims are governed by federal law, this

5    District is in no better position than the Central District of California in applying the

6    applicable law and deciding this case.[11]  The court also notes that both Washington and

7    California have a strong interest in litigation between these companies where CEMCO is

8    located in California and BlazeFrame is located in Washington.

9         Lastly, the pendency of related actions in the transferee forum is a significant

10   factor in considering the interest of justice factor.  *Amazon.com*, 404 F. Supp. 2d at 1261.

11   Litigation of related claims in the same tribunal is strongly favored because it facilitates

12   efficient, economical and expeditious pre-trial proceedings and discovery, and avoids

13   duplicitous litigation and inconsistent results.  *Id.*

14        BlazeFrame argues that under the first-to-file rule, both cases should be heard in

15   the Western District of Washington.  The first-to-file rule may be invoked when an action

16   involving substantially the same parties and issues has already been filed in another

17   district.  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Nakash

18   v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  It is true that this case was filed less

19   than two months before the California case.  However, CEMCO is the only party in

20   common between the cases,[12] and there are substantially different legal issues in the two

21   cases.  In California, CEMCO sued Klein and Clark Western Dietrich Building Systems

22   LLC for breach of contract, breach of covenant of good faith and fair dealing, inducing

23

24   ───────────────

25        [11] To the extent the Agreement would require application of California law to the tortious
     interference claim, the Central District of California is more familiar with California state law
26   than is this court.

27        [12] The court recognizes that although Klein is not a named party in this litigation, he is
     the owner of BlazeFrame.

ORDER- 8

1   breach of contract, and tortious interference with contractual relations and business

2   expectancy under California state law.  Dkt. # 21 (Ex. 1 to Trojan Decl. iso Reply), FAC.

3   Here, BlazeFrame sued CEMCO for patent infringement and tortious interference with

4   business expectancies.  Although the tortious interference claims are present in both

5   cases, the patent infringement claims predominate in this case.  *See* Dkt. # 1 (Compl.) ¶¶

6   7-33 (three patent infringement claims), ¶¶ 34-39 (tortious interference claim).

7   Accordingly, the first-to-file rule is not applicable here.

8           Nevertheless, the court is persuaded that the cases share at least some

9   commonalities.  In addition to the tortious interference claim, the Agreement is central to

10   the state law claims in California, and relevant to at least one (out of twenty-nine)

11   affirmative defenses here.  Thus, the court finds that judicial economy also slightly

12   weighs in favor of transfer.

**D. Balance of Factors**

14           The court finds that on balance, although close, CEMCO has met its burden of

15   showing that the convenience of the parties, the convenience of the witnesses, and the

16   interests of justice favor transfer to California.  28 U.S.C. § 1404.

**E. Conclusion**

18           For all the foregoing reasons, the court GRANTS defendant's motion to transfer

19   venue.  Dkt. # 12.  The Clerk is DIRECTED to transfer this case to the United States

20   District Court, Central District of California, and to terminate all pending motions,

21   without prejudice to their re-filing.

22           Dated this 6th day of June, 2013.

The Honorable Richard A. Jones
United States District Judge